UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:13-CV-71-KSF

GGNSC VANCEBURG, LLC d/b/a
GOLDEN LIVING CENTER – VANCEBURG, et al.                    PLAINTIFF

vs.                              **OPINION AND ORDER**

LOIS TAULBEE                                                 DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Defendant Lois Taulbee ("Taulbee") to dismiss this action and the motion of Plaintiff Golden Living Center – Vanceburg ("Golden Living") to compel arbitration and enjoin Taulbee from pursuing litigation in state court. For the reasons discussed below, the motion to dismiss will be denied, and the motion to compel will be granted.

**I.     FACTUAL AND PROCEDURAL HISTORY**

Defendant, Lois Taulbee, was a resident of a Golden Living Center's Vanceburg, Kentucky, location from February 20, 2012 to December 24, 2012. While a resident, Ms. Taulbee suffered physical and emotional trauma due to the alleged negligent care given to her by Golden Living. Taulbee alleges that this inadequate care caused her physical condition to deteriorate beyond the normal aging process.

Taulbee had given her daughter, Sheila Gay Osborne, a General Power of Attorney on September 10, 2009. DE 1-2. Based on that power of attorney, Osborne signed an Alternative Dispute Resolution Agreement ("ADR Agreement") between Taulbee and Golden Living in 2012. DE 1-1.

On February 15, 2013, Taulbee filed suit in state court against Golden Living, alleging negligence, medical negligence, corporate negligence, and a violation of the long-term-care resident's rights. Golden Living answered that the state court claims are subject to the binding

ADR Agreement between the parties and demanded the dispute be referred to arbitration and the state court case dismissed with prejudice.

Golden Living then filed a complaint with this Court, alleging federal jurisdiction by way of diversity. It argues that the ADR Agreement is valid and enforceable and asks this court to compel Taulbee to arbitrate her state claims and to enjoin her from further pursuing her claims in state court. Taulbee filed a motion to dismiss alleging lack of subject matter jurisdiction, abstention, equitable estoppel and failure to state a claim upon which relief can be granted. Taulbee's opposition to arbitration focuses primarily on the scope of the power of attorney and whether it encompasses an agreement to arbitrate.

## II.   MOTION TO DISMISS

### A.   Applicable Jurisdiction and Abstention Standards

Before ruling on the merits of any case, jurisdiction must be established as a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998). Federal courts are courts of limited jurisdiction, and subject matter jurisdiction may be obtained only with the existence of diverse parties or a federal question. *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010); 28 U.S.C. §§ 1331, 1332. When subject matter jurisdiction is challenged, the party claiming jurisdiction bears the burden of establishing its existence. *Ohio Nat. Life. Ins. Co. v. United States*, 922 F. 2d 320, 324 (6th Cir. 1990). When dealing with factual challenges to subject matter jurisdiction, courts have significant leeway to consider evidence outside of the pleadings to resolve the matter. *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009). Furthermore, when diversity jurisdiction is invoked in a case involving a limited liability company ("LLC"), the court must examine the citizenship of each of the LLC's members to determine citizenship of the LLC. *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

Even where federal courts properly have jurisdiction over the matter, a district court may abstain from exercising its jurisdiction and refrain from hearing a case in limited circumstances.

*Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 625 (6th Cir. 2009). This exception is narrow because a district court presented with a case that arises under its original jurisdiction has a "virtually unflagging obligation" to exercise the jurisdiction conferred upon it by the coordinate branches of government and duly invoked by litigants. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Abstention is an "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Id*. at 813.

Taulbee argues that *Colorado River* abstention is applicable here. Under *Colorado River*, the threshold issue is whether there are parallel proceedings in state court. *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). Once a court has determined there are parallel proceedings, the Supreme Court identified eight factors that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of state court. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001). Those factors are:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Id*. When examining these factors, the court must not issue an opinion based upon "a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with *the balance heavily weighted in favor of the exercise of jurisdiction*." *Id*. at 207 (emphasis added).

B.   **Subject Matter Jurisdiction**

Taulbee argues that Golden Living's Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Specifically, Taulbee asserts that the parties are not diverse, and there is no federal question involved in the case. This Court agrees there is no federal question, but the parties are diverse and jurisdiction does exist.

Golden Living rightfully notes that the Federal Arbitration Act ("FAA"), which governs the alleged ADR Agreement, does not by itself create subject matter jurisdiction. *American Federation*

3

*of Television and Radio Artists v. WJBK-TV*, 164 F. 3d 1004, 1007 (6th Cir. 1999). Taulbee is incorrect, however, in arguing that the parties lack diversity. In support of this assertion, Taulbee relies on Golden Living's annual reports filed with the Kentucky Secretary of State, which list four members in 2011, one of whom is Melissa S. Bentley, a Kentucky resident. Taulbee argues there is no diversity because both Golden Living and Taulbee are Kentucky citizens. The 2012 annual report does not provide an address for Ms. Bentley or any other officer, but lists 1017 Fairlane Dr., Vanceburg, KY 41179 as Golden Living's principal office address.

Golden Living responds that Ms. Bentley's employment with the company ended on August 9, 2012 before the current suit was filed, and that her status as a member of the company ended at the same time. No member is currently a citizen of Kentucky. In addition, Golden Living correctly points out that Taulbee misconstrues the purpose and meaning of annual reports filed with the Kentucky Secretary of State. Annual reports do not provide evidence of citizenship for diversity purposes. *Rizzo v. GGNSC Holdings, LLC.*, No. 10–45–HRW, 2010 WL 3724216, at *1 (E.D. Ky. Sept. 15, 2010). LLC's are required to file annual reports in order to comply with KRS 275.115, which in turn requires that LLC's maintain a registered office in Kentucky. *Id*.

The annual reports in this case only prove that Golden Living is operating in Kentucky, but do not provide evidence of citizenship for the purpose of diversity jurisdiction. Here, Golden Living has demonstrated that the parties are diverse and subject matter jurisdiction is present.

    **C.    Colorado River Abstention**

As noted above, a court considering whether to apply *Colorado River* abstention must first determine if there are parallel state court proceedings and then apply the eight-factor test. *Paine-Webber*, 276 F.3d at 206. Taulbee correctly argues that this case is parallel to the state court action. The parties are nearly identical, both cases involve the same claims of personal injury, and both cases focus on the validity of the ADR Agreement. "Exact parallelism is not required; it is enough if the two proceedings are substantially similar." *Romine v. Compuserve Corp.*, 160 F.3d

337, 340 (6th Cir. 1998). Having found that the proceedings are parallel, the Court will next consider the *Colorado River* factors to determine if abstention is warranted.

Both parties agree that the case does not involve any real property nor any assumed jurisdiction over any res or property, but disagree as to how this factor should apply. Golden Living argues this factor should count in its favor, and their position is supported by the case law. When there is no property in issue, the factor weighs in favor of the exercise of jurisdiction and against abstention. *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998). Thus, the lack of property in this case favors federal court jurisdiction.

The next *Colorado River* factor is whether the federal forum is less convenient to the parties. This factor weighs in favor of Taulbee. The state court action is currently taking place in Lewis County and the federal forum is 100 miles away. For potential witnesses in the case, such as facility staff, doctors, and other residents in the Lewis County area, to travel that distance would likely pose a substantial burden to them. In addition, the Golden Living facility and principal office are located in Lewis County. Relevant records and other forms of evidence are most likely located in Lewis County. Additionally, the alleged ADR Agreement and the alleged negligence arose in Lewis County. Under these facts, the second *Colorado River* factor weighs in favor of abstention.

The third *Colorado River* factor is avoidance of piecemeal litigation. The Court recognizes that, should the federal case and state case continue simultaneously, there is a chance of inconsistent outcomes. Cases dealing with similar situations have found, however, that the negative consequence of piecemeal litigation is necessary in FAA cases because of the law's policy favoring and encouraging arbitration. *PaineWebber*, 276 F.3d at 207 ("the desire to avoid litigating a single issue in multiple forums is insufficient to overcome the strong federal policy supporting arbitration."). It should be noted that "relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Memorial Hosp. v. Mercury*

5

*Construction Corp.*, 460 U.S. 1, 20 (1983) (emphasis in original). Thus, the third factor also weighs against abstention.

The fourth factor is the order in which jurisdiction was obtained. When considering this factor "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id*. at 21. Here the state court obtained jurisdiction before the federal court action was filed, but the federal action was filed very quickly thereafter. The Sixth Circuit held that "minimal temporal delay is insignificant." *PaineWebber*, 276 F.3d at 207. In *Moses H. Cone,* the Supreme Court held that a delay of nineteen days was not enough to weigh in favor of abstention. 460 U.S. at 21. Here, Taulbee filed the state court action on February 15, 2013, and Golden Living filed its federal action on March 14, 2013. The passage of twenty-seven days is also too insignificant to justify the use of abstention, especially when both cases remain in the early pleading stage. Thus, the fourth factor weighs against abstention.

The fifth factor, whether state or federal law governs, initially appears to be a mixed question. State law governs the scope of Taulbee's power of attorney, but if state law singles out arbitration agreements in the context of contracts generally, the FAA will preempt that state law. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003). The FAA is the source of law for interpreting the arbitration agreements or clauses. *PaineWebber*, 276 F.3d at 208. "Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender [of jurisdiction], the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone,* 460 U.S. at 26. "State and federal courts must enforce the Federal Arbitration Act ... with respect to all arbitration agreements covered by that statute." *Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201, 1202 (2012). A court's "task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional'

circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Id.* at 25-26, (emphasis in original). Accordingly, this factor weighs heavily in favor of federal court jurisdiction.

The next consideration is whether the state court will adequately protect the federal plaintiff's interests. This factor weighs in favor of abstention. In *PaineWebber*, the Sixth Circuit held that "[t]he FAA extends Congress' legislative authority to the maximum extent permitted under the Commerce Clause, and is therefore binding on state courts that interpret contracts involving interstate commerce." 276 F.3d at 208. While Golden Living correctly points out that some state courts have refused to enforce arbitration agreements, it has not demonstrated that the Lewis Circuit Court would be unfairly prejudiced against them. Under the Supremacy Clause, a state court is bound by the requirements of the FAA. *Id*. Given the ability of the state court to protect Golden Living's rights, the sixth factor weighs in favor of abstention.

The seventh factor is the relative progress of the state and federal proceedings. Unlike the previous factor, this one weighs against abstention. Here, Golden Living's Complaint was filed the day after its Answer in the state court action. Neither action has proceeded past the initial pleadings stage. In *Romine*, where the Sixth Circuit found this factor weighed in favor of abstention, the state court action had proceeded past the pleading stage and entered into discovery. *Romine*, 160 F.3d at 342. Here, the limited progress in the state court weighs against abstention.

The final factor under *Colorado River* is the presence or absence of concurrent jurisdiction. While there is concurrent jurisdiction, this fact only marginally favors abstention, if at all. As noted above, the governing law is the FAA, which "expresses a preference for federal litigation." The existence of concurrent jurisdiction "is insufficient to justify abstention" under the circumstances. *PaineWebber*, 276 F.3d at 208-9.

7

The foregoing analysis demonstrates that only the second and sixth factors favor abstention. All other factors favor federal jurisdiction. Neither the fact that the state forum would be slightly more convenient to the parties, nor the existence of concurrent jurisdiction is an "exceptional" circumstance necessary to compel this Court to abandon the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817-18. It must also be kept in mind that "the balance [is to be] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. Accordingly, this Court holds that *Colorado River* abstention is not warranted in this matter.

      D.      **Equitable Estoppel**

Taulbee argues that equitable estoppel compels this Court to dismiss Plaintiff's complaint under Rule 12(b)(6). Taulbee says Golden Living orally agreed that it would not remove future cases to federal court if Taulbee would not sue Golden Living's Kentucky administrators in state court. DE 6 at 9 - 11. Taulbee did not sue the administrators in her state court action. She maintains that Golden Living was thus able to circumvent the forum defendant rule and proceed in federal court under diversity jurisdiction. She claims she would have sued the administrators if she had known that Golden Living intended to proceed in federal court. Accordingly, she claims Golden Living should be equitably estopped from proceeding with its federal court action to compel arbitration.

"A party triggers equitable estoppel by conduct inconsistent with a position later adopted that prejudices the rights of the other party who detrimentally relied on the prior conduct." *Horton v. Ford Motor Co.*, 427 F.3d 382, 388 (6th Cir. 2005). There are several problems with Taulbee's equitable estoppel argument. First Golden Living did not "remove" the state court action to federal court. Instead, it filed an original complaint in this Court to compel arbitration. Any party to an arbitration agreement may petition a United States District Court to compel arbitration. 9 U.S.C. § 4. No forum defendant rule was involved. Golden Living could have filed the same petition in

8

this Court no matter who was named in the state court action. Its ability to do so is a matter of federal law, not some advantage it gained through any agreement with Taulbee.

Second, Taulbee has not shown any prejudice. She could still move to amend her state court complaint and name the administrators if she believes it is desirable to do so. She has failed to demonstrate any "detriment" to her as a result of Golden Living's representation about removal. *See Horton*, 427 F.3d 382, 388 (elements of equitable estoppel). Accordingly, Taulbee's equitable estoppel argument is without merit.

### III.  MOTION TO COMPEL ARBITRATION

In its Answer in state court, Golden Living asserted that all of Plaintiff's claims are subject to the binding ADR Agreement and demanded the dispute be referred to arbitration. The same argument is made in its Motion to Compel before this Court. Taulbee's Motion to Dismiss and Response to Golden Living's Motion to Compel argue that the arbitration Agreement is not valid because (1) the power of attorney did not authorize Taulbee's daughter to agree to arbitration; (2) it is unconscionable and void as against public policy; and (3) it fails to evidence a contract involving commerce.

The Federal Arbitration Act was enacted "to ensure judicial enforcement of privately made agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-20 (1985). The FAA preempts any contradictory state law and applies to any contract that evidences an intention to settle any controversy arising from the transaction through arbitration. *Stuler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006). The FAA provides that an agreement to arbitrate will be enforceable except for "such grounds as exist at law or in equity for the revocation of any contract." *Id.* State law governing the validity, revocability and enforceability of contracts applies to arbitration clauses. *Id*. State laws applicable only to arbitration agreements, however, are preempted by the FAA. *Great Earth Cos., Inc. v. Simons,* 288 F.3d 878, 889 (6th Cir.2002).

9

"Therefore, state law governs generally applicable contract defenses [to an arbitration agreement], such as fraud, duress, or unconscionability." *Id.*

A motion to compel arbitration requires a court to "determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F. 3d 709, 714 (6th Cir. 2000). Courts should "examine the language of the contract in light of the strong federal policy in favor of arbitration." *Id*. Next, a court must consider the scope of the arbitration agreement. *Id*. If the court finds that the agreement to arbitrate "is not 'in issue,' it must compel arbitration." *Great Earth*, 288 F.3d at 889. In order to prevent enforcement of the arbitration agreement, a party "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Id.* (citation omitted). The standard "mirrors that required to withstand summary judgment." *Id*.

Taulbee does not raise any factual questions regarding the ADR Agreement. Instead, she presents only questions of law for the Court to decide. "Generally, the interpretation of a contract ... is a question of law for the courts...." *Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.,* 436 F.3d 662, 670 (6th Cir. 2006).

### A. The Arbitration Agreement

The ADR Agreement provides that it "applies to any and all disputes arising out of or in any way relating to this Agreement or to the resident's stay at the Facility...." DE 1-1 at 1. "Covered Disputes include but are not limited to all claims in law or equity arising from ... tort; ... negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer or safety standards." *Id.* at 1-3. It cautions in bold capitals that it governs important legal rights and should be read carefully and in its entirety before signing. *Id.* at 5. It explains that the Resident "has the right to seek advice of legal counsel concerning this Agreement" and that signing the Agreement is not a condition of admission. *Id.* It states that it shall be "governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. § § 1 et seq." *Id.* The first page of the Agreement also states in bold capital letters:

> **THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY, THE OPPORTUNITY TO PRESENT THEIR CLAIMS AS A CLASS ACTION AND/OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.**

*Id.* The Supreme Court has become emphatic in its rulings regarding state hostility to arbitration agreements and the preemption of hostile state law. In *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2011), the court held definitively that the FAA preempts state laws, including a state court's application of contract defenses, that run counter to its purposes and that pertain only to arbitration agreements.

Taulbee does not claim that the ADR Agreement is inapplicable because it does not cover the nature of the dispute. Instead, she contends that the ADR Agreement is not binding because her power of attorney did not give Osborne the authority to enter into the ADR Agreement on her behalf.

  B.  **Power of Attorney**

Taulbee relies heavily on the recent Kentucky Supreme Court decision of *Ping v. Beverly Enterprises, Inc.*, 376 S.W. 3d 581 (Ky. 2012). *Ping* is factually similar to the present case in many respects, but there are critical distinctions in the authority granted through the powers of attorney. Ping was also the daughter of a woman admitted to a nursing home, and she signed all documents for her mother, including an arbitration agreement, pursuant to a power of attorney. After her mother died, Ping filed a wrongful death action against the facility. When the facility demanded arbitration, Ping argued that she was not authorized to waive her mother's right to litigation.

The power of attorney Ping received authorized her to make financial decisions on behalf of her mother, including:

> acts pertaining to the management of Mrs. Duncan's property and finances, such as "tak[ing] possession of any and all monies, goods chattels, and effects belonging to me, wheresoever found; ... receiv[ing], deposit[ing], invest[ing] and spend[ing]

11

> funds on my behalf; ... tak[ing] charge of any real estate which I may own in my own name or together with other owners....

*Id.* at 586-87. It also authorized Ping to make:

> any and all decisions of whatever kind, nature or type regarding my medical care, and to execute any and all documents, including, but not limited to, authorizations and releases, related to medical decisions affecting me; and [t]o generally do any and every further act and thing of whatever kind, nature or type required to be done on my behalf.

*Id.* at 587. Finally, it included a "catch-all" that gave Ping authority "to do and perform, all, and every act and thing whatsoever requisite and necessary to be done, to and for all intents and purposes as I might or could do if personally present." *Id.* at 586.

The Supreme Court of Kentucky agreed with Ping that the catch-all provision did not authorize Ping to execute the arbitration agreement. The court reasoned that "Mrs. Duncan's power of attorney related expressly and primarily to the management of her property and financial affairs and to ensuring that health-care decisions could be made on her behalf." *Id.* at 592. The arbitration agreement was not a condition of admission to the facility, so it did not fall within the provision for health care decisions. *Id.* at 593. Moreover, the "catch-all" provision "did not give Ms. Ping a sort of universal authority beyond those express provisions." *Id.*

In the present case, by contrast, the power of attorney contained multiple specific authorizations that are much broader in scope than Ping's, including authority to: "make contracts"; "draw, make and sign in my name any and all checks, promissory notes, contracts or agreements"; "institute or defend suits concerning my property or rights"; and a catch-all "generally to do and perform for me and in my name all that I might do if present." DE 1-2. These powers are more than adequate to allow Osborne to bind Taulbee to an arbitration agreement under *Ping.*

Judge Thomas B. Russell in the Western District of Kentucky recently analyzed a similar power of attorney under *Ping* and reached the same conclusion:

> *Ping* is distinguishable from the present action for one obvious and significant reason: the power of attorney in *Ping* did not contain an express provision granting the attorney-in-fact authority "to draw, make and sign any and all checks, contracts,

12

> or agreements." This clause, as contained in the power of attorney, grants Delores authority to act beyond the categories of healthcare or financial decisions. If such language would have been included in the power of attorney at issue in *Ping*, it is highly likely that the Kentucky Supreme Court would have enforced the arbitration agreement.

*Oldham v. Extendicare Homes, Inc.*, No. 5:12-cv-199, 2013 WL 1878937 at *5 (W.D. Ky. 2013). Unlike *Ping*, Delores and Osborne were vested with the authority to enter into contracts on behalf of their principals. An arbitration agreement is a contract. The power of attorney must be read in accordance with its express terms and in light of the strong federal policy favoring arbitration. This Court finds that Osborne had the authority to execute the arbitration agreement on behalf of Taulbee. Taulbee's claims for negligence are unquestionably included within the scope of the arbitration agreement. When faced with a valid arbitration agreement and Osborne's authority to execute it on behalf of Taulbee, this Court is required by the Federal Arbitration Act to grant Golden Living's motion to compel arbitration.

Taulbee's arguments that arbitration agreements are different and require more than the general power to contract for authorization to execute one are of no help to her. That line of reasoning would simply result in preemption of such a requirement under the FAA.

### C. Unconscionability and Public Policy

Taulbee argues that, even if the arbitration agreement was within the authority of the power of attorney, it is unconscionable and thus invalid. DE 10 at 15-17. This argument is without merit. The Supreme Court recently considered an argument that arbitration agreements were unconscionable in *Concepcion*. It expressed the focus of its review as follows:

> When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration. In *Perry v. Thomas*, 482 U.S. 483 (2008), for example, we noted that the FAA's preemptive effect might extend even to grounds traditionally thought to exist "at law or in equity for the revocation of any contract." *Id.* at 492, n. 9. We said that a court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that

13

> enforcement would be unconscionable, for this would enable the court to effect what ... the state legislature cannot." *Id.* at 493, n. 9.

131 S. Ct. at 1747 (citations omitted). While § 2 of the FAA preserves applicable common law contract defenses, the *Concepcion* Court warned that the grounds available under § 2 must not be construed to include a state's policy preference for procedures incompatible with arbitration:

> Although § 2's savings clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives. ... As we have said, a federal statute's saving clause ... "cannot in reason be construed as allowing a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act."

*Id.* at 1748 (citations omitted).

Moreover, the arbitration agreement is not void against public policy. First, it should be noted that there is "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. ___, 132 S.Ct. 23, 25 (2011). Recently, the Supreme Court specifically rejected an argument that arbitration agreements can be voided for public policy reasons. *Marmet Health Care Center, Inc. v. Brown*, _____ U.S._____, 132 S.Ct. 1201, 1203-4 (2012). The West Virginia Supreme Court had held that predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes violated state public policy. *Id.* at 1203.

The case arose from three negligence suits against nursing homes in West Virginia. In each case, a family member of the resident signed an arbitration agreement, which required the parties to arbitrate all disputes except those involving late payments. *Id*. In reversing the West Virginia Supreme Court, the United States Supreme Court held: "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id*. (quoting *Concepcion,* 131 S.Ct. 1740, 1747 (2011)). Accordingly, any public policy precluding the arbitration of claims against nursing homes or precluding persons with the power to contract from entering into an arbitration agreement, would be preempted by the FAA.

D.     **Contract Involving Commerce**

Taulbee also contends that the ADR Agreement is unenforceable because it does not evidence a transaction involving commerce. The FAA requires enforcement, except upon grounds for revocation of any contract, of "a contract evidencing a transaction involving commerce" for settlement "by arbitration [of] a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2.

When interpreting the term "involving commerce" in the FAA, courts should treat the terms as having "the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc*., 539 U.S. 52, 56 (2003). Because the FAA "provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause, it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'- that is, 'within the flow of interstate commerce.'" *Id*. (citations omitted). When determining whether arbitration agreements signed by residents of nursing homes affect commerce, courts have considered various factors. *In re Nexion Health at Humble, Inc*., 173 S.W.3d 67 (Tex. 2005), held that the nursing home's acceptance of Medicare was sufficient for the court to establish the arbitration agreement involved commerce. *Id.* at 69. The District Court of New Mexico reached the same conclusion last year. *THI of New Mexico at Hobbs Center, LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1184 (D. N.M. 2012), citing numerous similar cases. The purchase of goods from out-of-state vendors by nursing homes was sufficient to prove the requirement of "involving commerce" was met. *Owens v. Coosa Valley Health Care, Inc*., 890 S0. 2d 983, 987-88 (Ala. 2004).

In the present case, the Arbitration Agreement itself states: "The parties to this Agreement acknowledge and agree that upon execution by Resident, this Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act." DE 1-1 at 1. Golden Living's web site shows

that it accepts Medicare. www.goldenlivingcenters.com/expert-thinking/paying-for-healthcare.aspx. Accordingly, this Court holds that Taulbee's claim that the transaction does not involve commerce is without merit.

### E. Enjoining State Court Litigation

Golden Living also moves this Court to enjoin Taulbee from proceeding with her state court action. While the FAA requires a federal court to stay their own proceedings, it does not specifically authorize federal courts to stay pending state court cases. *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002). The federal court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti-Injunction Act, 28 U.S.C. § 2283.

The Sixth Circuit found the district court's injunction of state-court proceedings after compelling arbitration did not violate the Anti-Injunction Act. *Great Earth*, 288 F.3d at 894. The court held that the injunction fell "within the exception for injunctions 'necessary ... to protect or effectuate [district court] judgments.'" *Id.* It concluded "[a]n injunction of the state proceedings [was] necessary to protect the final judgment of the district court on this issue." *Id.* Since enjoining the state proceeding is not barred by the Anti-Injunction Act and such injunction would serve to protect or effectuate this Court's judgments, Taulbee is enjoined from pursuing the pending state court action before the Lewis Circuit Court.

### IV. CONCLUSION

**IT IS ORDERED** that:

A. Taulbee's motion to dismiss [DE 6] is **DENIED**.

B. Golden Living's motion to compel arbitration and enjoin Taulbee from pursuing her State Court Action [DE 8] is **GRANTED**. Taulbee is **ENJOINED** from pursuing the pending state court action before the Lewis Circuit Court.

C.	This matter is **DISMISSED WITHOUT PREJUDICE**, and following the arbitration, either party may petition the Court to take appropriate action.

This August 7, 2013.

Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**